UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SAVERS PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) CAUSE NO. 3:12-CV-528 RLM ) |
| INDUSTRIAL SAFETY AND ENVIRONMENTAL SERVICES, INC., and TRISTAN "TRIS" O. GOUR, | ) ) ) ) |
| Defendants | ) ) |

OPINION and ORDER

Industrial Safety and Environmental Services, Inc., an environmental contractor and consulting firm, and Tristan Gour, its founder and CEO, were covered by a "claims made and reported" professional liability insurance policy issued by Savers Property & Casualty Insurance Company when Mr. Gour was named as a defendant in a civil RICO action in May 2012. Savers denied coverage and filed suit against Industrial Safety and Mr. Gours seeking a declaration that Savers had no duty to defend or indemnify the defendants in the underlying litigation. Its motion for summary judgment is before the court. For reasons that follow, the court grants Savers' motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine

issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255. The existence of an alleged factual dispute, by itself, will not defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2).

From August 1, 2011 to August 1, 2012, Industrial Safety and Mr. Gour were covered by Commercial Lines Policy No. GL 0642339 issued by Savers. The policy provided multiple types of coverage, including the Professional Liability Coverage (Coverage E) at issue in this case, and was comprised of the following forms and endorsements:

| Form/Endt # | Edition Date | Title |
|---|---|---|
| JCL 0003 | 12 03 | Company Policy Jacket |
| SVCP1001 | 04 09 | Company Common Policy Declarations |
| **CIL1500B** | **02 02** | **Schedule of Forms and Endorsements** |
| TRIA0001 | 10 08 | Policyholder Disclosure Notice or Terrorism Insurance Coverage |
| **SVEV1900** | **12 09** | **Environmental Contractors & Consultants Policy Declaration** |

2

| | | |
|---|---|---|
| **ENV2002** | **12 09** | **Specifically Covered Professional Services Endorsement** |
| ENV2004 | 12 09 | Specifically Covered Operations Endorsement |
| ENV2005 | 12 09 | Employee Benefits Liability Coverage Endorsement |
| ENV2014 | 12 09 | Deductible Liability Insurance Endorsement |
| ENV2013 | 12 09 | Tank Contracting Amendatory Endorsement |
| ENV2030 | 12 09 | Transportation Pollution Liability Endorsement |
| **ENV0001** | **12 09** | **Environmental Contractors & Consultants Commercial General Liability and Professional Liability Coverage Form** |
| CG2175 | 06 08 | Certified Acts of Terrorism & Other Acts of Terrorism Committed outside the U.S. Exclusion |
| CG2176 | 01 08 | Punitive Damages Related to Certified Acts of Terrorism |
| CG2184 | 01 08 | Certified Nuclear, Biologi[c]al, Chemical, or Radiological Acts of Terrorism Exclusion |
| CGL1766 | 06 10 | Co Territorial Limitation Endorsement |
| IL0003 | 09 08 | Calculation of Premium Endorsement |
| IL0017 | 11 98 | Common Policy Declarations Endorsement |
| IL0158 | 09 08 | IN Changes |
| IL0272 | 09 07 | IN Changes – Cancellation/Non-Renewal |
| IL4747 | 01 09 | Service of Suit Endorsement |
| PRIV0001 | 11 09 | Privacy Statement |
| 0901IL | 03 07 | Savers Witness Clause |
| **CSL5000** | **06 09** | **Century Environmental Contractors & Consultants Application** |

"Schedule of Forms and Endorsements" (CIL1500B). [Doc. No. 23-1 at p. 4] (emphasis added to highlight the forms and endorsements relating to Professional Liability Coverage).

SVEV 1900, the "Environmental Contractors & Consultants Commercial General Liability & Professional Liability Coverage Part-Declarations", identifies the policy limit, retroactive date, deductible, and schedule of hazards for each coverage. The Declarations state that "Consultant's Professional Liability Coverage E" is limited to $1,000,000 per claim, is retroactive to "2/01/05" with respect to

3

"(ENV 0001 only)", and has a $2,500 per claim deductible. [Doc. No. 23-1 at p. 6]. The Declarations also contain this reference to retroactive dates for coverage under "ENV 0002":

| | |
|---|---:|
| Retroactive Dates ENV 0002 | |
| Commercial General Liability Coverage A and B | N/A |
| Contractor's Pollution Liability Coverage D | N/A |
| Consultant's Professional Liability Coverage E | N / A |

[Doc. No. 23-1 at p. 6]. ENV 0002 isn't listed in the Schedule of Forms and Endorsements, and isn't contained in Industrial Safety's insurance policy.

Industrial Safety's coverage was provided under ENV 0001, the "Environmental Contractors & Consultants Commercial General Liability, Contractors Pollution Liability and Consultant's Professional Liability Policy", which provides in relevant part as follows:

**COVERAGE E CONSULTANT'S PROFESSIONAL LIABILITY**

**This is a Claims Made and Reported Coverage.**
**"Defense expense" is within the limits of**
**insurance shown on the declarations.**

**1.   Insuring Agreement**
**a.**   We will pay on behalf of the insured, those sums that the insured is legally obligated to pay as damages directly resulting from a "wrongful act" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" or allegations to which this insurance does not apply.  We may at our discretion, investigate any "wrongful act" and settle any "claim" or "suit" that may result....

4

**b.** This insurance applies to damages and "defense expenses" only if:

**(1)** The "wrongful act" takes place in the "coverage territory"; and

**(2)** The "wrongful act" arises out of covered "professional services"; and

**(3)** The "wrongful act" occurred on or after the Professional Liability Retroactive Date, if any, shown in the Declarations and prior to the end of the policy period;

**(4)** You or any insured…did not have knowledge of a "wrongful act" which occurred prior to the Effective Date of this policy but on or after the Professional Liability Retroactive Date shown in the declarations, which was not reported in writing to us at the time it first became know to any insured; and

**(5)** A "claim" for damages is:

(a) first made against an insured during the policy period…, and
(b) is reported in writing to us promptly during the policy period….

A "claim" is deemed first made against the insured when the insured first receives notice of it. A "claim" is deemed reported to us on the date we receive written notice of it.

**(6)** All "claims" for damages to the same person or organization…will be deemed to have been made at the time the first of these "claims" is made against any insured and reported to us in writing.

**2. Exclusions**

This insurance does not apply to:

***

> **d. Criminal, Dishonest, Fraudulent, Malicious or Intentional Acts**
>
> "Claims", "defense expenses", or damages arising out of any criminal, dishonest, fraudulent, malicious, or intentional act or omission, or those of a knowingly wrongful nature committed intentionally by or at the direction of the insured.

(ENV 0001-Sec. I, Coverage E, ¶¶ 1 and 2(d)) [Doc. No. 23-1 at pp. 35-36].

The policy defines "wrongful act" as "an act or omission negligently made, or a series of related acts or omissions negligently made in the rendering of "professional services." (ENV 0001-Section VI, ¶ 42) [Doc. No. 23-1 at p. 47]. Under the "Specifically Covered Professional Services Endorsement" (ENV2002):

> [T]he definition of **Professional Services** in Section VI – Definitions, [was] deleted in its entirety and replaced by the following:
>
> **Professional Services** means only those services specifically listed in the Schedule above [Phase I, II and III Environmental Site Assessments, Regulatory Permitting & Compliance Consulting, Storage Tank & Remedial System Design, Industrial Hygiene, and Health & Safety Consulting] that are performed for a fee by or on behalf of the Named Insured.

[Doc. No. 23-1 at p. 8].

Industrial Safety's Commercial Lines Policy was in effect in May 2012, when Tristan Gour was named as one of several defendants in <u>Browning *et al.* v. Flexsteel Industries, Inc., *et al.*</u>, Cause No. 3:11-CV-480, a civil action seeking injunctive relief and damages for "ground water contamination allegedly caused by defendants' unpermitted and unlawful dumping of industrial solvents and

6

other hazardous waste." Browning v. Flexsteel Industries, Inc., 955 F.Supp.2d 900, 903-04 (N.D. Ind. 2013).[1] The amended complaint alleges that Mr. Gour knowingly participated in a scheme to defraud and obstruct justice that was designed "to conceal [the defendants'] environmental crimes and evade liability for their actions," in violation of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1964(c). Id. at 904. The scheme allegedly continued "from at least May 1, 1997 through the present [the filing of the lawsuit]," but the only acts attributed to Mr. Gour (the illegal disposal of hazardous waste, mail fraud, and obstruction of justice to avoid detection) occurred in 1997 and 1998. (Amd Cmplt ¶¶ 3 and 270-375 [Doc. No. 24 in 3:11cv480]).

Industrial Safety notified Savers of the suit in May 2012. Savers denied coverage because the claims asserted against Mr. Gour involved alleged acts of misconduct that occurred before February 1, 2005, the retroactive date for professional liability coverage. Savers filed this suit for declaratory judgment against Industrial Safety and Mr. Gour seeking to enforce its interpretation of the policy.

In June 2013, the district court dismissed the claims against Mr. Gour in *Browning*, finding that:

> Although the plaintiffs allege that the various defendants have engaged in many troubling activities, including environmental crimes,

---

[1] The court assumes the parties' familiarity with the underlying facts in *Browning* which were set out in detail in the district court's orders of March 25, 2013 [Doc. No. 107 in 3:11-CV-480] and June 25, 2013 [Doc. No. 113 in 3:11-CV-480], and doesn't repeat those facts in this opinion.

7

mail fraud, and possibly obstruction of justice, they have not stated a claim that any defendants violated RICO, because the complaint does not adequately allege either a RICO "enterprise" or a "pattern of racketeering activity.

Browning v. Flexsteel Industries, Inc., 955 F.Supp.2d at 903, 908-920.

The parties relied on Indiana law in their briefs and haven't raised a choice of law issue, so the court applies the law of Indiana as the forum state. *See* Camp v. TNT Logistics Corp., 553 F.3d 502, 505 (7th Cir. 2009). In Indiana, insurance policies are governed by the same rules of construction as other contracts. Westfield Ins. Co. v. Hill, 790 F. Supp. 2d 855, 860 (N.D. Ind. 2011); Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009). A court's goal in interpreting an insurance contract is to "ascertain and enforce the parties' intent as manifested in the insurance contract. [The court] construe[s] the insurance policy as a whole and consider[s] all of the provisions of the contract and not just the individual words, phrases or paragraphs. If the language is clear and unambiguous, [the court] give[s] the language its plain and ordinary meaning." Argonaut Ins. Co. v. Jones, 953 N.E.2d 608, 615 (Ind. Ct. App. 2011) (*quoting* Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009)). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, courts construe insurance policies strictly against the insurer. . . . This is particularly the case where a policy excludes coverage." American Family Mut. Ins. Co. v. Bower, 752 F. Supp. 2d 957, 961-962 (N.D. Ind. 2010).

8

Whether an insurer has a duty to defend in an underlying state court action is a question of contractual interpretation "that does not require the resolution of any facts or issues in that underlying action." Westfield Ins. Co. v. Sheehan Constr. Co., 575 F. Supp.2d 956, 959 (S.D. Ind. 2006). An insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to, or ascertained by, the insurer after a reasonable investigation. Newnam Mfg., Inc. v. Transcon. Ins. Co., 871 N.E.2d 396, 405 (Ind. App. 2007). No defense is owed if the pleadings clearly show that the claim is excluded under the policy. *See* Walton v. First American Title Ins. Co., 844 N.E.2d 143, 147 (Ind. App. 2006).

Savers maintains that it had no duty to defend or indemnify Industrial Safety or Mr. Gour in *Browning* because Industrial Safety wasn't a party to that litigation and the claims against Mr. Gour were excluded under Coverage E Consultant's Professional Liability, paragraph 1(b)(3), which limited liability to claims for "wrongful acts" that occurred on or after February 1, 2005, the "Professional Liability Retroactive Date" shown in the Declarations, and before the end of the policy period (August 1, 2012).[2]

Mr. Gour contends that: (1) the policy is a "claims made" policy, not an occurrence policy, and the claim was made and reported during the policy period;

---

[2] For summary judgment purposes, Savers doesn't dispute that the predicate acts attributed to Mr. Goer in *Browning* took place in the "coverage territory"; that they arose out of covered "professional services"; that Industrial Safety and Mr. Gour didn't know of any "wrongful act" that occurred after February 1, 2005 (the Professional Liability Retroactive Date) but before the policy became effective on August 1, 2011; or that the claim in *Browning* was made and reported during the policy period.

9

(2) the Professional Liability Retroactive Date doesn't apply to the professional services rendered by him in *Browning*; and (3) even if it did, it doesn't bar coverage because he wasn't aware of the claim before the effective date of the policy (August 1, 2011) and the complaint asserts liability for acts of co-defendants that are alleged to have occurred after February 1, 2005 and before August 1, 2012. Mr. Gour's arguments are based on isolated words and phrases taken out of context. When the policy is viewed as a whole, it clearly and unambiguously excludes coverage for the claims asserted against Mr. Gour in *Browning*.

Industrial Safety's and Mr. Gour's professional liability coverage (Coverage E) is provided under endorsement ENV 0001, the "Environmental Contractors & Consultants Commercial General Liability, Contractors Pollution Liability and Consultant's Professional Liability Policy", not ENV 0002. Coverage E is "claims made and reported" coverage, which links coverage to the claim and notice, rather than to the original tort and injury. *See* St. Paul Fire & Marine Ins. Co v. Barry, 438 U.S. 531, 535 n.3 (1978). But it's subject to a retroactive provision that limits coverage to claims involving "wrongful acts" that "occurred on or after the Professional Liability Retroactive Date, if any, shown in the Declarations and prior to the end of the policy period [August 1, 2012]." (ENV 0001-Sec. I, Coverage E, ¶ 1(b)(3)).

The Declarations (SVEV 1900) show that the Professional Liability Retroactive Date for Coverage E in ENV 0001 is "02/01/05" – the retroactive date

that Mr. Gour specifically requested in Industrial Safety's application for insurance, which was attached to and incorporated in the policy as CSL 5000.[3]

Mr. Gour notes that two endorsements are listed in the "Retroactive Date" section of the Declarations (ENV 0001 and ENV 0002), that both contain Professional Liability Coverage E, and that the Professional Liability Retroactive Date for Coverage E in ENV 0002 is listed as "N/A". He believes the reference to ENV 0002 must have been an error, since there is no ENV 0002 in the Schedule of Forms and Endorsements contained in Industrial Safety's policy, and opines that the Declarations must have been referring to ENV 2002 (the "Specifically Covered Professional Services Endorsement"), "the form number resembling most closely ENV 0002". From this, Mr. Gour reasons that the Declarations, as modified, show that there is no Professional Liability Retroactive Date for claims, like those in *Browning*, that are based on "professional services" (specifically "regulatory permitting and compliance consulting") covered under ENV 2002, and asks the court to adopt his interpretation of the policy provisions to avoid rendering them ineffective and meaningless. Citing Castillo v. Prudential Property

---

[3] Mr. Gour completed an application for insurance on behalf of Industrial Safety on June 2, 2011, requesting the following coverage:

|  | Limits of Insurance | Deductible/ Retention | Effective Date | Retroactive Date |
|---|---|---|---|---|
| Commercial General Liability | $1,000,000 | $2,500 | 07/01/11 |  |
| Contractor's Pollution Liability | $1,000,000 | $2,500 | 07/01/11 |  |
| Professional Liability | $1,000,000 | $2,500 | 07/01/11 | 02/01/05 |

*See* "Century Insurance Environmental Contractors and Consultants Application" (CSL 5000) [Doc. No. 23-1 at pp. 69].

11

and Casualty Ins. Co., 834 N.E.2d 204, 205 (Ind. App. 2005) ("[courts] must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions"); Burkett v. American Family Ins. Group, 737 N.E.2d 447, 452 (Ind. App. 2000) (same); Abbey Villas Dev. Corp. v. Site Contractors, Inc., 716 N.E.2d 91, 100 (Ind. App. 1999) ("[Courts] make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless.")

The court doesn't read the policy language the way Mr. Gour does. Nothing in the summary judgment record suggests that the reference to ENV 0002 was an error, or that the parties ever intended Industrial Safety's professional liability coverage to be open-ended. Mr. Gour specifically requested professional liability coverage retroactive to February 1, 2005, when he completed the application for insurance in June 2011. Consistent with his request, the Declarations in Industrial Safety's policy clearly state that Consultant's Professional Liability Coverage E under ENV 0001 is retroactive to February 1, 2005.

The Declarations also identify the types of coverage available under ENV 0002, and indicate that the Retroactive Date doesn't apply to Coverage A, B, D, or E under that endorsement. But Mr. Gour's coverage was provided under ENV 0001, not ENV 0002. The provision relating to ENV 0002 might have been unnecessary, but it isn't ambiguous or inconsistent with other policy provision.

The amended complaint in *Browning* alleged that Mr. Gour engaged in a scheme to defraud that continued from May 1997 through May 2012 (the filing of

the lawsuit), but the only acts he is alleged to have committed — the illegal disposal of hazardous waste, mail fraud, and obstruction of justice to avoid detection — took place in 1997 and 1998, earlier than the retroactive date of Industrial Safety's professional liability coverage under the Commercial Lines Policy.

Mr. Gour argues alternatively that coverage is provided under paragraph 1(b)(4) of Coverage E because it's a "stand-alone" provision (shown by the absence of an "and" between paragraphs 1(b)(3) and (b)(4)), so the retroactive provision in paragraph 1(b)(3) doesn't apply if Industrial Safety and Mr. Gour "were unaware of a claim prior to the Effective Date of the Policy." Mr. Gour submitted an affidavit attesting that he didn't know about the claims asserted against him in *Browning* until May 17, 2012. [Doc. No. 24-2]. The court sees things differently, for several reasons.

The policy expressly and unequivocally provides that Professional Liability Coverage applies if and only if each requirement listed in paragraph (1)(b) is met. The absence of an "and" between paragraphs (b)(3) and (b)(4) doesn't dictate otherwise.

Under paragraph 1(b)(4), coverage applies only if:

You or any insured...did not have knowledge of a "wrongful act" which occurred prior to the Effective Date of this policy [August 1, 2011] but on or after the Professional Liability Retroactive Date shown in the declarations [February 1, 2005], which was not reported in writing to us at the time it first became know to any insured[.]

Mr. Gour says the "but on or after" part of paragraph 1(b)(4) is "ambiguous" and "unintelligible" and so doesn't apply. The court disagrees.

Paragraph 1(b)(4) isn't ambiguous. It is akin to a preexisting condition provision, and excludes coverage when the insured knew about a "wrongful act" — not "a claim", as Mr. Gour argues — that occurred "on or after the Professional Liability Retroactive Date shown in the Declaration" (February 1, 2005) and before the "Effective Date of [the] policy" (August 1, 2011) and didn't report it to the insurance company. Had Savers denied coverage under that paragraph, Mr. Gour's knowledge of the acts alleged in *Browning* might have been an issue. But Savers didn't deny coverage under that paragraph.

In his final argument, Mr. Gour asserts that Coverage E applies because the *Browning* complaint alleges that he was part of a continuing scheme and is liable for the acts of other members of the enterprise that occurred after February 1, 2005. He is mistaken. Professional liability coverage is provided under paragraph 1(b)(3), if, any only if, the claim involves a "wrongful act" that occurred on or after February 1, 2005. The policy defines "wrongful act" as "an act or omission negligently made, or a series of related acts or omissions negligently made in the rendering of 'professional services.'" (ENV 0001, Section VI, ¶ 42). The *Browning* complaint alleges that Mr. Gour and his co-defendants engaged in intentional acts of fraud, which are excluded from coverage under both Coverage E, paragraphs 1(b)(3) and (2)(d).

For the foregoing reasons, the court GRANTS Savers' motion for summary judgment [Doc. No. 22], and DIRECTS the Clerk to enter a declaratory judgment that Savers Property & Casualty Insurance Company owes no duty to defend or indemnify Industrial Safety and Environmental Services, Inc. or Tristan Gour in *Browning et al. v. Flexsteel Industries, Inc., et al.*, Case No. 3:11-CV-480.

SO ORDERED.

ENTERED:  March 25, 2014 

/s/ Robert L. Miller, Jr.
Judge, United States District Court